**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**SCOTT MARCUS**, Chief Asst. City Attorney (SBN 184980)
**CORY M. BRENTE**, Senior Assistant City Attorney (SBN 115453)
**TY A. FORD**, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-6900; Fax No.: (213) 978-8785
Email: Ty.Ford@lacity.org

*Attorneys for Defendant,* **CITY OF LOS ANGELES**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ANGELINA ATABEKOVA-MICHAELIDIS, and VARDOUI MICHAELIDOU; both individually and as successors in interest to Decedent MELKON MICHAELIDIS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, BRYAN MORALES; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO. 2:22-cv-05620-MCS-MAAx**<br>[Assigned to Hon. Mark C. Scarsi, 1st Cthse, Ctrm. 7C; Mag. Maria A. Audero, USDC-Roybal, Ctrm. 690]<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**<br><br>**[Fed. R. Civ. P. 56]**<br><br>*[Filed concurrently with Separate Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Ty A. Ford and Exhibits; [Proposed] Order]*<br><br>Date:          July 24. 2023<br>Time:          9:00 a.m.<br>Crtrm.:        7C. 7th Floor<br><br>Trial Date:         October 31. 2023<br>Complaint Filed:   August 9, 2022 |

**TO THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

1

**PLEASE TAKE NOTICE THAT** on **JULY 24, 2023 at 9:00 a.m.** or as soon thereafter as counsel may be heard in Courtroom 7C of the United States Courthouse, located at 350 W. 1st Street, Los Angeles, CA 90012, before the Honorable Mark C. Scarsi, United States District Judge, Defendant City of Los Angeles will move this Honorable Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 56(c) for summary judgment as to all claims against Defendant City of Los Angeles, or, in the alternative, partial summary judgment, on the following grounds:

1.      Defendant City is entitled to judgment as a matter of law on Plaintiff's Fourth Claim (*Monell* claim for an alleged unconstitutional custom, practice or policy) because there is no evidence that Defendant City had an unlawful custom, practice or policy.

2.      Defendant City is entitled to judgment as a matter of law on Plaintiff's Fourth Claim (*Monell* claim for an alleged unconstitutional custom, practice or policy) because there is no evidence that any an alleged unconstitutional customs, practices or policies were the moving force behind any alleged constitutional violations.

3.      Defendant City is entitled to judgment as a matter of law on Plaintiff's Fifth Claim (*Monell* claim for an alleged failure to train) because there is no evidence of any alleged failure to train.

4.      Defendant City is entitled to judgment as a matter of law on Plaintiff's Fifth Claim (*Monell* claim for an alleged failure to train) because there is no evidence that an alleged failure to train was the cause of any alleged constitutional violations.

5.      Defendant City is entitled to judgment as a matter of law on Plaintiff's Sixth Claim (*Monell* claim for alleged ratification) because there is no evidence of any alleged ratification of any alleged constitutional violations.

6.      Defendant City is entitled to judgment as a matter of law on Plaintiff's Sixth Claim (*Monell* claim for an alleged failure to train) because there is no evidence that any alleged ratification was the cause of any alleged constitutional violations.

7.      Defendant City is entitled to judgment as a matter of law on Plaintiffs' state law claims against Defendant City's supervisory employees for the alleged wrongful acts of others, including those alleged by Defendant Morales, because these claims are not legally cognizable and there is no evidence to support such claims.

This motion was filed following meet and confer efforts pursuant to Central District, Local Rule 7-3, on June 8, 2023.

This motion is based on Plaintiffs' Complaint, the Memorandum of Points and Authorities attached hereto, the Separate Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Ty A. Ford and Exhibits, and any other evidence presented at or before the time of the hearing on this motion.

Dated:  June 16, 2023         Respectfully submitted,

**HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**SCOTT MARCUS**, Chief Asst. City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By: _Colleen R. Smith for_

TY A. FORD, Deputy City Attorney
*Attorneys for Defendant,* **CITY OF LOS ANGELES**

# TABLE OF CONTENTS

**Page(s)**

**MEMORANDUM OF POINTS AND AUTHORITIES** ....................... 1

**I.     INTRODUCTION** ....................................................... 1

**II.    STANDARDS OF SUMMARY JUDGMENT** ............................ 2

**III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY** .......................................................................... 3

**IV.    THE COMPLAINT FAILS TO STATE A *MONELL* CLAIM AGAINST DEFENDANT CITY** ................................. 5

   **A.    Standards to Prove Any Theory Under *Monell***................. 5

   **B.    Defendant City Is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim Concerning the LAPD's Customs, Practices and Policies** ........................ 6

   **C.    Plaintiffs Cannot Prove That the LAPD Has Unlawful Policies** .................................................... 7

   **D.    Plaintiff Cannot Prove That the LAPD Has Unlawful Customs or Practices**........................................... 8

   **E.    Defendant City Is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim Concerning Failure to Train or Supervise**...................... 10

   **F.    Defendant City Is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim Based On Alleged Ratification** .......................................... 13

**V.     PLAINTIFFS' STATE LAW CLAIMS AGAINST "DOE SUPERVISORS" FAIL AS A MATTER OF LAW**................................................................................ 14

   **A.    "Doe Supervisors" Cannot Be Held Vicariously Liable for the Intentional Torts of Battery and the Bane Act Alleged by Plaintiffs** .......................... 15

i

# <u>TABLE OF CONTENTS</u>
### (Continued)

**Page(s)**

    **B.**    **"Doe Supervisors" Cannot Be Held Vicariously Liable for the Negligence of Others as Alleged by Plaintiffs** ............................................................. 17

**VI.**   **CONCLUSION** ................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................2, 3

*Aydin Corp. v. Loral Corp.*,
  718 F.2d 897 (9th Cir. 1983) ...........................................................................2

*Bd. of Cnty. Comm'rs v. Brown*,
  520 U.S. 397 (1997)..........................................................................5, 10, 11

*Benavidez v. County of San Diego*,
  993 F.3d 1134 (9th Cir. 2021) .......................................................................11

*Berman v. Sink*,
  2013 U.S. Dist. LEXIS 75443 (E.D. Cal. 2013)............................................20

*Bhan v. NME Hosps., Inc.*,
  929 F.2d 1404 (9th Cir. 1991) .........................................................................2

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) .........................................................................10

*Bowen v. Watkins*,
  669 F.2d 979 (5th Cir. 1982) .........................................................................12

*Caldwell v. Montoya*,
  10 Cal.4th 972 (Cal.Ct. 1995)........................................................................19

*Carter v. City of Carlsbad*,
  799 F. Supp. 2d 1147 (S.D. Cal. 2011)..........................................................17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................2

*Cerna v. City of Oakland*,
  161 Cal.App.4th 1340 (Cal.Ct.App. 2008)....................................................15

*Christie v. Iopa*,
  176 F.3d 1231 (9th Cir.1999) ........................................................................13

iii

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989) .......................................................................... *passim*

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985) ...................................................................... 6, 7, 9, 12

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988) ..................................................................... 7, 8, 9, 13

*Clouthier v. Cnty. of Contra Costa*,
    591 F.3d 1232 (9th Cir. 2010), ..................................................................14

*Connick v. Thompson*,
    563 U.S. 51 (2011) ..................................................................................10, 11

*Cornell v. City and Cty of San Francisco*,
    17 Cal.App.5th 766 (Cal. Ct. App. 2017) ..........................................16, 17

*Cunningham v. Gates*,
    229 F.3d 1271 (9th Cir. 2000) ..................................................................18

*David v. City of Fremont*,
    2006 U.S. Dist. LEXIS ..............................................................................17

*Davis v. City of Ellensburg*,
    869 F.2d 1239 (9th Cir. 1989) ..................................................................10

*de Villers v. County of San Diego*,
    156 Cal.App.4th 238 (Cal.Ct.App. 2007) ..........................................19, 20

*Delfino v. Agilent Technologies, Inc.*,
    145 Cal.App.4th 790 (Cal.Ct.App. 2006) ................................................18

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) ....................................................................3

*Dougherty v. City of Covina*,
    654 F.3d 892 (9th Cir. 2011) ....................................................................11

*Eastburn v. Regional Fire Protection Auth.*,
    31 Cal. 4th 1175 (Cal.Ct. 2003) ..............................................................18

*Erdman v. Cochise Cnty.*,
    926 F.2d 877 (9th Cir. 1991) ....................................................................12

*Fernelius v. Pierce,*
   22 Cal.2d 226 (Cal.Ct. 1943) ..................................................................18

*Gates v. Superior Court,*
   32 Cal.App.4th 481 (Cal.Ct.App. 1995) ...............................................15

*Gillette v. Delmore,*
   979 F.2d 1342 (9th Cir. 1992) .............................................................9, 14

*Graham v. Connor,*
   490 U.S. 386 (1989)........................................................................1, 3, 8

*Gravelet-Blondin v. Shelton,*
   728 F.3d 1086 (9th Cir. 2013) ...................................................................6

*Hayes v. Cnty. of San Diego,*
   57 Cal. 4th 622 (Cal. Ct. 2013) ........................................................18, 20

*Hernandez v. City of Pomona*
   (2009) 46 Cal. 4th 501 ...............................................................................17

*Hibbs v. Los Angeles County Flood Control Dist.,*
   252 Cal.App.2d 166 (Cal.Ct.App. 1967) ...............................................19

*Hunter v. Cnty of Sacramento,*
   652 F.3d 1225 (9th Cir. 2011) ....................................................................9

*Hyde v. City of Willcox,*
   23 F.4th 863 (9th Cir. 2022) ...............................................................11, 12

*Jett v. Dallas Indep. Sch. Dist.,*
   491 U.S. 701 (1989)....................................................................................13

*Kaiser Cement Corp. v. Fischbach & Moore, Inc.,*
   793 F.2d 1100 (9th Cir. 1986) .....................................................................2

*Kirkpatrick v. Cnty of Washoe,*
   843 F.3d 784 (9th Cir. 2016) .....................................................................11

*Koussaya v. City of Stockton,*
   54 Cal.App.5th 909 (Cal.Ct.App. 2020)..................................................20

*Lehto v. City of Oxnard,*
   171 Cal.App.3d 285 (Cal.Ct.App. 1985)..................................................15

*Los Angeles v. Heller,*
    475 U.S. 796 (1986)...........................................................................6

*Lujano v. County of Santa Barbara,*
    190 Cal.App.4th 801 (Cal.Ct.App. 2010)...........................................18

*Lytle v. Carl,*
    382 F.3d 978 (9th Cir.2004) ..............................................................13

*Marsh v. County of San Diego,*
    680 F.3d 1148 (9th Cir. 2012) ...........................................................12

*Merritt v. County of Los Angeles,*
    875 F.2d 765 (9th Cir. 1989) ........................................................6, 12

*Michel v. Smith*
    188 Cal. 199 (Cal.Ct. 1922)..............................................................15

*Monell v. Dep't of Soc. Servs. of City of New York,*
    436 U.S. 658 (1978).................................................................. *passim*

*Munoz v. City of Union City*
    120 Cal.App.4th 1077 (Cal.Ct.App. 2004).................................19, 20

*Nunn v. State of California*
    35 Cal.3d 616 (Cal.Ct. 1984) ............................................................19

*Orr v. Bank of Am.,*
    285 F.3d 764 (9th Cir. 2002) ...............................................................2

*Pembaur v. Cincinnati,*
    475 U.S. 469 (1986)..........................................................................5, 7

*Reese v. Cnty. of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018) (*citations omitted*)............................16

*Saved Magazine v. Spokane Police Dept.,*
    19 F.4th 1193 (9th Cir. 2021) ..............................................................8

*Screws v. United States,*
    325 U.S. 91 (1945)..............................................................................16

*Sheehan v. City & Cnty, of San Francisco,*
    741 F.3d 1211 (9th Cir. 2014) ...........................................................14

vi

*Shoyoye v. County of Los Angeles,*
  203 Cal.App.4th 947 (Cal. Ct. App. 2012) ..............................................16

*Skeels v. Pilegaard,*
  2013 U.S. Dist. LEXIS 34302 (N.D. Cal. 2013) ......................................20

*Soliz v. Williams,*
  74 Cal.App.4th 577 (Cal.Ct.App. 1999) ..................................................15

*Szajer v. City of L.A.,*
  2008 WL 11350227 (C.D. Cal. Nov. 12, 2008) .......................................12

*Ting v. U.S.,*
  927 F.2d 1504 (9th Cir. 1991) .................................................................18

*Trevino v. Gates,*
  99 F.3d 911 (9th Cir. 1996) ................................................................9, 14

*Tsao v. Desert Palace, Inc.,*
  698 F.3d 1128 (9th Cir.2012) ..................................................................11

*Venegas v. County of Los Angeles,*
  32 Cal.4th 820 (Cal.Ct. 2004) .................................................................16

*Vickers v. U.S.,*
  228 F.3d 944 (9th Cir. 2000) ...................................................................19

*Wellington v. Daniels,*
  717 F.2d 932 (4th Cir. 1983) ...................................................................12

*Zoslaw v. MCA Distrib. Corp.,*
  693 F.2d 870 (9th Cir. 1982) .....................................................................2

**Statutes**

42 U.S.C. § 1983 ...........................................................................5, 14, 16

Cal. Civ. Code § 52.1 ...................................................................................16

Cal. Gov. Code § 820.2 ................................................................................19

Cal. Gov. Code § 820.8 ................................................................................15

Cal. Gov. Code § 845 .................................................................................18

Cal. Gov. Code § 12525.3 ............................................................................4

Cal. Pen. Code § 830.1 ..............................................................................3, 4

Cal. Pen. Code § 832 ..............................................................................3, 4, 5

Cal. Pen. Code § 832.3 ...........................................................................3, 4, 5

Cal. Pen. Code § 832.4 ...........................................................................3, 4, 5

Cal. Pen. Code § 835a .......................................................................3, 4, 5, 8

Cal. Pen. Code § 13500 ............................................................................3, 4

Cal. Pen. Code § 13503 ............................................................................3, 4

Cal. Pen. Code § 13510 ............................................................................3, 4

Cal. Pen. Code § 13515.25 ...........................................................................4

Cal. Pen. Code § 13515.26 ...........................................................................4

Cal. Pen. Code § 13515.27 ...........................................................................4

**Other Authorities**

CACI 440 ..................................................................................................18

CACI 441 ..................................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

The current operative Complaint in this case is Plaintiffs' Complaint for Damages.  *See* Docket No. 1.  This case arises from an officer-involved shooting involving LAPD police officer Bryan Morales.  The crux of Plaintiffs' complaint is the alleged wrongful death of Melkon Michaelidis and damages flowing therefrom.  *Id.*  In Plaintiffs' Complaint for Damages, they assert theories of direct and vicarious liability against Defendant City.  Plaintiffs allege federal claims of directly liability based on three theories of *Monell* liability (unconstitutional custom, practice or policy; failure to train and ratification) and state law claims of vicarious liability against "Doe Supervisors" for the alleged wrongful acts of other officers.

Defendant City is entitled to judgment as a matter of law on Plaintiffs' *Monell* claims.  In support of their *Monell* claims, Plaintiff's Complaint does not identify any specific faulty policies, procedures or training.  Plaintiff's Complaint is limited to generalizations and conclusory allegations and other alleged incidents which are factually distinct and not on par with this case.  LAPD police officers are trained consistent with the law and the principles set forth by the California Commission on Peace Officer Standards and Training ("POST").  LAPD's training on lethal force meets the requirements set by POST and is approved by POST.  LAPD police officers receive continuous training on these subjects both formally and in the field.  LAPD's training on lethal force also follows the principles set forth by *Graham v. Connor* and progeny.

This incident on its own also is not enough to establish a violation of *Monell* based on an alleged unconstitutional custom, practice or policy, and there is no evidence of any unlawful customs, practices or policies.  Additionally, there is no evidence to support Plaintiff's allegations of a failure to train.  Indeed, the evidence is to the contrary.  There also is no evidence that Defendant City's had deficient training such that it led to Plaintiff's alleged injuries.  Further, Defendant City did not

1  ratify the alleged wrongful shooting.  After an internal investigation, the use of lethal
2  force was deemed to be out of policy.

3       Defendant City also is entitled to judgment as a matter of law on Plaintiffs'
4  state law claims against Defendant City's supervisory employees for the alleged
5  wrongful acts of others, because these claims are not legally cognizable.  There also
6  is no evidence to support these claims.

7  ## II.    STANDARDS OF SUMMARY JUDGMENT.

8       Summary judgment is appropriate when the pleadings, discovery, disclosure
9  materials on file, and any affidavits "show there is no genuine issue as to any material
10 fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v.*
11 *Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" if there is a sufficient
12 evidentiary basis on which a reasonable factfinder could find for the nonmoving party
13 and a dispute is "material" if it could affect the outcome of the suit under the
14 governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The
15 amount of evidence necessary to raise a genuine issue of material fact is enough to
16 require a jury or judge to resolve the parties' differing versions of the truth at trial.
17 *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). In evaluating a
18 summary judgment motion, a court views all facts and draws all inferences in the
19 light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach &*
20 *Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

21      The moving party must show that there are no genuine issues of material fact.
22 *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  The burden shifts
23 to the nonmoving party to "set forth specific facts showing that there is a genuine
24 issue for trial." *Anderson*, 477 U.S. 242, 256 (1986). The nonmoving party "must do
25 more than simply show that there is some metaphysical doubt" as to the material
26 facts, *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002), and instead "must
27 produce specific evidence, through affidavits or admissible discovery material, to
28 show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th

Cir. 1991). Because the plaintiff bears the burden at trial of proving every element of every claim, the defense satisfies its initial burden in moving for summary judgment by simply pointing out the *absence* of evidence necessary to support plaintiff's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Thus, in order to get to a jury, the nonmoving party must introduce significant probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 249. If a plaintiff fails "to present any evidence to support" a claim, summary judgment in favor of the defendant is appropriate. *Id*. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY.

Defendant City hereby incorporates Defendant Morales' Uncontroverted Facts, Nos. 1 through 65, set forth in his separately filed motion for summary judgment. UF #1.

The California Commission on Peace Officer Standards and Training ("POST") sets the minimum hiring and training standards for all peace officers in the state of California. *See* Cal. Pen. Code §§ 830.1, 832, 832.3, 832.4, 13500, 13503 and 13510; UF#2. The LAPD is subject to the requirements established by POST, and all LAPD police officers have to be POST certified to maintain their employment as a LAPD police officer. *See* Cal Pen Code §§ 830.1, 832, 832.3, 832.4, 13500, 13503 and 13510; UF#3. The LAPD's training, in the academy and throughout an officer's career, complies with and is approved by POST. *See* Cal Pen Code §§ 830.1, 832, 832.3, 832.4, 13500, 13503 and 13510; UF #4.

The LAPD's policy on use of force, like the POST training, is consistent with California Penal Code §835a and the principles and factors established by the seminal case on use of lethal force – *Graham v. Connor*, 490 U.S. 386 (1989). UF #5. The LAPD's written policy, like the POST training, is that an officer may use lethal force when *that* officer *reasonably* believes, based on the totality of the circumstances, that lethal force is necessary to "defend against an imminent threat of death or serious

bodily injury to the officer or to another person"; or to apprehend a fleeing felon. UF #6. 7.POST has minimum requirements as to the training on use of force – lethal and less-lethal force – and interacting with persons with suspected mental illness which applies to police officers throughout their career. *See* Cal. Pen. Code §§ 830.1, 832, 832.3, 832.4, 13515.25, 13515.26, and 13515.27; UF #7. The LAPD's training provided to all of its police officers on the subjects of lethal force and interacting with persons suspected of a mental illness is consistent with the law, its policies, the POST requirements; and is approved by POST. *See* Cal. Pen. Code §§ 832, 832.3, 832.4, 835a; UF #8.

The POST and LAPD training on lethal force and interacting with persons suspected of a mental illness is given to all LAPD police officers in their recruit training and continuously throughout their career. UF #9. The LAPD, like POST, does not train its officers that there is a pre-set or pre-determined distance for using lethal force. UF #10. The LAPD trains its officers, consistent with POST, that the unique circumstances of each situation govern *if* and *at what distance* lethal force can be used and a police officer must rely on his/her own judgment. UF #11. POST and LAPD policy and training state that the scene must be stabilized, which includes maintaining officer safety, *before* an officer can give address a person's suspected mental illness. UF #12.

The LAPD expects that its police officers will follow their training and the policies of the LAPD. UF #13. To ensure that policies and training are followed, whenever lethal force is used by any LAPD police officer, the LAPD along with the District Attorney's Office or the State Attorney General's Office investigate and review that LAPD police officer's use of lethal force. *See* Cal. Gov. Code §12525.3; UF #14. If the LAPD finds an officer's use of lethal force is inconsistent with LAPD training and policy, a personnel complaint may be initiated which can result in that officer being suspended or even terminated. UF #15.

Officer Morales went through the LAPD's police academy and had continuous training throughout his career.  UF #16.  All of the officers at the scene had sufficient training and experience that they did not require supervision by another officer.  UF #17.  Officer Morales was the only LAPD officer to use lethal force during this incident.  UF #18.  Officer Morales had the same basic training as every other LAPD police officer, including on the subjects of lethal force and interacting with persons suspected of a mental illness.  *See* Cal. Pen. Code §§ 832, 832.3, 832.4, 835a; UF #19.  Officer Morales made his own assessments and his decision to use lethal force was based on his perceptions and belief that Mr. Michaelidis posed an imminent threat of death or serious bodily injury to Officer Morales and others.  UF #20.

This incident was investigated by the LAPD, and the LAPD's Board of Police Commission determined that the use of lethal force was out of policy.  UF #21.

## IV.    THE COMPLAINT FAILS TO STATE A *MONELL* CLAIM AGAINST DEFENDANT CITY.

### A.    Standards to Prove Any Theory Under *Monell.*

There is no respondeat superior liability under 42 U.S.C. § 1983.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  A municipality can only be held directly liable under Section 1983 for *its own* unlawful conduct. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to so do, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).  Plaintiffs cannot claim that the City is liable under *Monell* simply because it employs an alleged tortfeasor. *Monell*, *supra¸* 436 U.S. at 691.  The plaintiff's burden in establishing causation under *Monell* is a heavy one.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 378 (1989).

If the plaintiff is unable to prove that there is an underlying constitutional deprivation, the plaintiff cannot establish that the municipality is liable either. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* .... or any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Thus, if the Court grants Officer Morales' motion for summary judgment and finds as a matter of law that Officer Morales did not deprive Mr. Michaelidis of his constitutional rights, the City is entitled to summary judgment on all of the *Monell* claims asserted against the City.

**B.    Defendant City Is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim Concerning the LAPD's Customs, Practices and Policies.**

Even if Plaintiffs could prove that Officer Morales violated Mr. Michaelidis' constitutional rights, to prevail on a *Monell* claim based on an alleged unlawful custom, practice or policy, Plaintiffs must prove with competent, admissible evidence that the LAPD expressly adopted an official policy, had a longstanding or widespread custom or practice *and* that the custom, practice or policy was the moving force behind the deprivation of his constitutional rights. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818–20 (1985); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (citations and quotations omitted). "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Id*. at 823. The City also must act with deliberate indifference, which is a conscious choice to follow a course of action among various alternatives. *Harris*, *supra,* 489 U.S. at 384. Mere negligence, even gross negligence, is not "deliberate indifference." *Merritt v. County of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989)

1  (*citing Harris, supra*).  Evidence of a single incident of unconstitutional use of force,

2  without more, also will not suffice to establish municipal liability.  *Tuttle*, *supra*, 471

3  U.S. at 823–24.

4        **C.**    **Plaintiffs Cannot Prove That the LAPD Has Unlawful Policies.**

5        As set forth in the Model Ninth Circuit Jury Instructions, No. 9.5, "'Official

6  policy' means a formal policy, such as a rule or regulation adopted by the defendant

7  [name of local governing body], resulting from a deliberate choice to follow a course

8  of action made from among various alternatives by the official or officials

9  responsible for establishing final policy with respect to the subject matter in question.

10        There must be a directive or order attributable to a final municipal

11  policymaker.  *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).  The mere fact

12  that a final policymaker defers to the discretionary decision of or agrees with the

13  opinions and recommendations of a subordinate does not turn the subordinate's

14  decision into official policy.  *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

15        "Where the controlling law places limits on [law enforcement officers']

16        authority, they cannot be said to have the authority to make contrary

17        policy. . . Such results would not conform to *Monell* and the cases

18        following it. . ..  A sheriff, for example, is not the final policymaker with

19        respect to the probable-cause requirement for a valid arrest. He has no

20        alternative but to act in accordance with the established standard; and his

21        deliberate or mistaken departure from the controlling law of arrest would

22        not represent municipal policy."

23  *Pembaur, supra*, 475 U.S. at 486 (1986) (White, J., concurring).  Where a

24  subordinate executes the policy in an unreasonable manner, the plaintiff may sue that

25  employee individually.  In such instances, the claim does not lie with the public entity

26  itself.  *Id.*

27  ///

28  ///

As the facts show, POST sets the minimum training standards for all peace officers in the state of California and POST has a set of Learning Domains on all the subjects that are taught to police officers. The POST standards are based on relevant case law and statutory authority. The LAPD's policies follow those rules and regulations established by case law, by statutory authority and by POST. The LAPD's policy on when force is permissible mirrors those principles established by *Graham v. Connor* and Cal. Pen. §835a. POST, which LAPD also follows, also mirrors these same principles. As with the legal authority, the LAPD's policy on when lethal force can be used does not contain any bright-line or pre-set distances between the suspect and the officer using lethal force. The LAPD's written policies on interacting with persons suspected of a mental illness also follow the standards set forth by POST, which states that the scene must be stabilized, and officer safety should not be compromised or disregarded in such instances.

Plaintiffs have no evidence of and cannot prove that the LAPD has an unlawful policy concerning use of lethal force or interacting with persons suspected of a mental illness. Further, there is no evidence that any alleged unlawful policies were the moving force behind Officer Morales' use of lethal force and any deprivation of Mr. Michaelidis' constitutional rights. Thus, Defendant City is entitled to summary judgment on Plaintiffs' *Monell* claims concerning alleged unlawful policies applicable to this incident.

### D.   Plaintiff Cannot Prove That the LAPD Has Unlawful Customs or Practices.

*Monell* liability may also attach when an employee committed a constitutional violation pursuant to a widespread practice or custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Allegations of an isolated or sporadic incident cannot form the basis for *Monell* liability. *Saved Magazine v. Spokane Police Dept.*, 19 F.4th 1193, 1201 (9th Cir. 2021). As set forth in the Model Ninth Circuit Jury Instructions, No. 9.5, "'Practice or custom' means any longstanding, widespread, or

well-settled practice or custom that constitutes a standard operating procedure of the defendant [name of local governing body]. [A practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violator[s] [was] [were] not disciplined, reprimanded or punished.]"

The courts use "longstanding", "widespread", and "well-settled" interchangeably. A widespread "custom or practice" must be so "persistent" that it constitutes a "permanent and well settled city policy" and "constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (citations omitted). The plaintiff must prove the existence of such a widespread practice or policy as a matter of fact. *Trevino, supra,* 99 F.3d at 920.

Additionally, in order for the actions of a lower-level employee to give rise to a *Monell* claim, those actions must not only be persistent and widespread, but the official policymaker must take no corrective action. *Monell, supra*, 436 U.S. 658; *Tuttle, supra*, 471 U.S. 808; *Praprotnik, supra*, 485 U.S. 112; *see also Hunter v. Cnty of Sacramento,* 652 F.3d 1225, 1236 (9th Cir. 2011) [holding that "a custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished."]

Here, there is no evidence that the LAPD had any widespread customs or practices which led to any constitutional violations in this case. Indeed, the evidence shows that the LAPD investigates all uses of lethal force to determine whether policy was followed by its employees, and those investigations are then presented to the LAPD's Board of Police Commission, which makes the final determination on these issues. The LAPD even has a division specifically designated to investigate uses of lethal force (among other types of uses of force), which is called the Force Investigation Division. If an employee is deemed to have violated policy, a personnel complaint can be initiated which may result in disciplinary actions.

Moreover, a LAPD police officer's use of lethal force also is reviewed by the District Attorney's Office or the State Attorney General's Office.

Plaintiffs cannot prove that the LAPD has any unlawful customs or practices applicable to this incident. There is no competent, admissible evidence of any unlawful customs or practices that led to any deprivation of Mr. Michaelidis' constitutional rights. The use of less lethal weapons in this incident is not a strict indicator of when to use lethal force. The evidence is clear that the policy, custom and practice is that the officer using lethal force has to make that decision for himself/herself and that no officer can tell another officer when to use lethal force. Plaintiffs also cannot prove that the LAPD does not investigate alleged unlawful actions and that no corrective action is taken where an officer is deemed to act errantly. Indeed, just the opposite is true.

Further, there is no evidence that any alleged unlawful customs or practices were the moving force behind Officer Morales' use of lethal force and any deprivation of Mr. Michaelidis' constitutional rights.

As such, Defendant City is entitled to summary judgment on Plaintiffs' *Monell* claim as it relates to any alleged customs or practices applicable to this incident.

### E.   **Defendant City Is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim Concerning Failure to Train or Supervise.**

To prevail on a claim for failure to train or supervise under *Monell*, Plaintiffs must prove that Mr. Michaelidis was deprived of a constitutional right, that the City (LAPD) had an inadequate training program or failed to supervise its employees which amounted to a deliberate indifference to the rights of persons with whom the inadequately trained or supervised employee comes into contact, and that the constitutional deprivation could have been avoided if the City properly trained or supervised its police officers. *Harris*, 489 U.S. at 390 (1989); *Brown, supra*, 520 U.S. at 409-11 (1997); *see also Connick v. Thompson,* 563 U.S. 51, 61 (2011); *Davis v. City of Ellensburg*, 869 F.2d 1239 (9th Cir. 1989); *Blankenhorn v. City of Orange*,

485 F.3d 463, 484 (9th Cir. 2007); *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir.2012). Municipal "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" or failure to supervise. *Harris,* 489 U.S. at 390; *Connick, supra,* 563 U.S. at 61; *see also Benavidez v. County of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021).

To avoid de facto respondeat superior liability, Plaintiffs must prove deliberate indifference by Defendant City, which is a strict standard to satisfy. *Harris,* 489 U.S. at 390. "Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61; *Kirkpatrick v. Cnty of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016). "Mere negligence in training or supervision . . . does not give rise to a *Monell* claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick, supra,* 563 at 61; *Bd. of the Cnty. Comm'rs (Bryan) v. Brown*, 520 U.S. 397, 407 (1997). However, without notice that its training is deficient and how its training program causes a violation of constitutional rights, municipalities cannot be found deliberately indifferent. *Id.*

To prove deliberate indifference on a failure to train or supervise claim, Plaintiffs must present evidence of a wide-spread pattern of similar constitutional violations by untrained or unsupervised employees. *Connick*, 563 U.S. at 62; *Kirkpatrick*, 843 F.3d at 794; *Flores*, 758 F.3d at 1159. In rare, limited circumstances, a pattern of similar violations may not be necessary where violations of constitutional rights are patently obvious consequence of a failure to train. *Connick*, 563 U.S. at 63; *Hyde v. City of Willcox*, 23 F.4th 863, 874-75 (9th Cir. 2022); *Kirkpatrick*, 843 F.3d at 794; *Flores*, 758 F.3d at 1159. The failure to supervise does not equate to not actually overseeing that employee's actions at the

exact moment of the alleged constitutional violation. A failure to supervise claim only attaches where there is a history of wide-spread constitutional violations placing the municipality on notice of the violations and the municipality does nothing to prevent the violations from recurring. *Harris*, 489 U.S. at 390; *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982).

In addition, the inadequate training or supervision must have "actually caused" the constitutional deprivation. *Marsh v. County of San Diego*, 680 F.3d 1148, 1159-60 (9th Cir. 2012); *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

The Supreme Court has held that evidence that simply because a particular officer may be ill-trained or unsupervised "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program" or alleged lack of supervision. *Harris*, 489 U.S. 378, 390 (1989); *Tuttle, supra*, 471 U.S. 808, 823–24 (1985); *Szajer v. City of L.A.*, 2008 WL 11350227, at *7 (C.D. Cal. Nov. 12, 2008) ["[M]unicipal liability based upon failure to train cannot be derived from a single incident."), aff'd, 632 F.3d 607 (9th Cir. 2011)]; *Hyde*, 23 F.4th at 875; *Merritt*, 875 F.2d at 770 ["Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County."]. Finally, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *Harris*, 489 U.S. at 391; *Hyde*, 23 F.4th at 875; *Erdman v. Cochise Cnty.*, 926 F.2d 877, 882-83 (9th Cir. 1991). Nor is it sufficient to establish that an incident could have been avoided if the officer had more training or supervision. *Harris, supra,* 489 U.S. at 391.

The evidence here shows that LAPD police officers, including those officers involved in this incident, are well-trained and that their training satisfies legal and POST requirements. In order to be a peace officer, LAPD police officers must be

POST certified.  The only way to obtain a POST certificate is to meet the POST basic minimum training requirements.  There is no evidence that the LAPD's training program is deficient or that Defendant City had any actual or constructive notice that any portion of its LAPD training program would cause a violation of citizen's constitutional rights.

Plaintiffs also cannot establish that Defendant City should be held liable on a theory of failure to supervise.  There is no evidence of wide-spread constitutional violations of the kind alleged in this lawsuit or that Defendant City was deliberately indifferent to any such constitutional violations.  Indeed, the LAPD, in conjunction with the District Attorney's Office or the State Attorney's General Office, investigates and reviews its police officers' uses of lethal force to determine if there was any wrongdoing by that officer.  If the LAPD determines there may be wrongdoing, a personnel complaint will be initiated and discipline (up to and including termination) may be imposed.

Therefore, Defendant City is entitled to summary judgment on Plaintiffs' *Monell* claims based on a failure to train.

### F.    **Defendant City Is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim Based On Alleged Ratification.**

To succeed on a claim for ratification under *Monell*, Plaintiffs must prove that a final policymaker approved of the subordinate's alleged unconstitutional actions and the basis for it.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.1999).  "[R]atification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act."  *Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir.2004) "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [defendant public body]."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737-38 (1989); *see also Lytle, supra,* 382 F.3d at 983.  Plaintiffs must show that an official,

final policymaker involved has adopted and expressly approved of the acts of the defendant. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir.1996). Ratification generally requires more than acquiescence. *Sheehan v. City & Cnty, of San Francisco*, 741 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part, on other grounds, *City & Cty. of San Francisco, Calif. v. Sheehan,* 135 S. Ct. 1765 (2015).

There must be sufficient facts that the final policymaker "made a deliberate choice to endorse" the defendant's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir.1992). The final policymaker must "have knowledge of the constitutional violation and actually approve of it," the "mere failure to overrule a subordinate's actions, without more, is insufficient" to allege municipal liability under Section 1983. *Sheehan, supra*, 743 F.3d at 1231. Even the mere failure to discipline employees, without more, is insufficient to establish municipal liability under a ratification theory. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), rev'd on other grounds, *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) [holding that the mere allegation that employees were not disciplined for violations of plaintiffs' constitutional rights was insufficient to establish ratification].

Here, the evidence shows that the City did not ratify the use of lethal force during this incident. After the LAPD investigated this incident, the LAPD's Board of Police Commission deemed that the use of lethal force was out of policy. Accordingly, Plaintiffs have no evidence and cannot prove their *Monell* claims based on a theory of ratification.

## V. PLAINTIFFS' STATE LAW CLAIMS AGAINST "DOE SUPERVISORS" FAIL AS A MATTER OF LAW.

Plaintiffs allege that "DOE SUPERVISORS" of the City are vicariously liable under state law for alleged intentional and/or negligent wrongful acts of Officer Morales and others. Plaintiffs claims against the "Doe Supervisors" fail as a matter of law.

In California, the general rule is that there is no respondeat superior liability between colleagues who are public employees. California Government Code § 820.8 states that "a public employee is not liable for an injury caused by the act or omission of another person." A police chief ". . . may even be charged with the duty of selecting the members of the force, but he is not responsible for their acts, unless he has directed such acts to be done, or has personally co-operated in the offense, for each policeman is, like himself, a public servant." *Michel v. Smith* 188 Cal. 199, 202 (Cal.Ct. 1922).

### A.    "Doe Supervisors" Cannot Be Held Vicariously Liable for the Intentional Torts of Battery and the Bane Act Alleged by Plaintiffs.

"[C]laims against public employees [or public entities] [are] controlled by the California Tort Claims Act [Gov. Code §§ 810]," which abrogates the usually permissive rules of pleading and requires "'every fact material to the existence of [Defendants'] statutory liability must be pleaded with particularity.'" *Gates v. Superior Court*, 32 Cal.App.4th 481, 494 (Cal.Ct.App. 1995), quoting *Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795 (Cal.Ct. 1985); accord *Soliz v. Williams*, 74 Cal.App.4th 577, 584 (Cal.Ct.App. 1999). When alleging liability based upon a statute, this requires at a minimum, that the litigant "specifically allege the applicable statute or regulation" that was allegedly violated. *Lehto v. City of Oxnard*, 171 Cal.App.3d 285, 292–293 (Cal.Ct.App. 1985); *Cerna v. City of Oakland*, 161 Cal.App.4th 1340, 1350 (Cal.Ct.App. 2008) [applying rule to both mandatory duty and negligence *per se* claims].) The pleadings therefore limit the statutory duties Plaintiffs may assert at trial. Plaintiffs' complaint fails to identify any specific statutory authority authorizing these claims against "Doe Supervisors".

Conclusory allegations are insufficient to support a claim based on an intentional tort. As set forth above, while a public entity may possibly be vicariously liable, under certain scenarios, for the intentional acts of its employees while on duty, fellow public employees are not. Cal. Gov. Code § 820.8.

Additionally, alleged indirect actions are insufficient to support a Bane Act claim. "The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. Cnty. of Sacramento,* 888 F.3d 1030, 1040 (9th Cir. 2018) (*citations omitted*). The allegations against an individual defendant must be analyzed based on what that individual alone did and not what someone else did or did not do. *See Reyes ex rel. Reyes*, 2013 U.S. Dist. LEXIS 69275, 2013 WL 2147023 at *11 ["indirect actions are insufficient to support [Bane Act] liability."] As such, there is no such concept as "integral participant" or "failure to intervene" under the Bane Act. Merely being present when Officer Morales used lethal force against Mr. Michaelidis also is insufficient to hold "Doe Supervisors" liable under the Bane Act. The requirement is that each defendant personally ***act by threat, intimidation or coercion***. *Reese, supra,* 888 F.3d at 1043-44; *see also Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004) [Section 52.1 "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interfere with a constitutional or statutory right."]; *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 959 (Cal.Ct.App. 2012) ["the statute was intended only to address only egregious interferences with constitutional rights, not just any tort."].

In addition, the Bane Act requires that the defendant had a specific intent to violate the person's constitutional rights. *Screws v. United States*, 325 U.S. 91 (1945); *Cornell v. City and Cty of San Francisco*, 17 Cal.App.5th 766, 791-92 (Cal. Ct. App. 2017); *Reese, supra,* 888 F.3d at 1043-1045. Evidence simply showing the officer's conduct amounted to a constitutional violation under an objectively reasonable standard is insufficient. *Id.* at 1045. Rather, the plaintiff must prove that the officer intended not only the force, but also intended its unreasonableness. *Id.* The element of "intent" under California Civil Code section 52.1 (the Bane Act) is not the same as the general intent applied in analyzing Section 1983 claims, and

16

merely being present when force was used, knowing about it, or even using excessive force is insufficient. *Cornell, supra,* 17 Cal.App.5th at 791-92. In the context of an excessive use of force case, the use of force must be deliberately excessive or spiteful, i.e. did the alleged wrongdoer act for the particular purpose of depriving the person of his/her civil rights. *Id.*

### B. "Doe Supervisors" Cannot Be Held Vicariously Liable for the Negligence of Others as Alleged by Plaintiffs.

"Negligence involves the violation of a legal duty . . . by the defendants to the person injured, e.g., the deceased in a wrongful death action." *Id.* The elements of a negligence claim are (1) duty owed to the decedent, (2) breach of that duty, (3) causal connection, and (4) actual loss. *Id.* California Courts judge claims of negligent use of force by the same standards as they would use to evaluate whether there was a Fourth Amendment violation. "Negligence claims stemming from allegations of excessive force by a police officer are . . . analyzed under the Fourth Amendment's reasonableness standard." *Carter v. City of Carlsbad,* 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011) (citing *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (noting that negligence is "measured by the same reasonableness standard of the Fourth Amendment."); *see also, Hernandez v. City of Pomona* (2009) 46 Cal. 4th 501, 513; *David v. City of Fremont,* 2006 U.S. Dist. LEXIS at *63 (*citing Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1102-6). The same consideration of the totality of the circumstances required by Graham and Garner is required in determining reasonableness under California negligence law. *Hernandez, supra,* at 514.

As with intentional torts, a negligence claim cannot be asserted against "Doe Supervisors" for what some other officer, including Officer Morales, did or did not do during this incident. To support their claim of negligence against "Doe Supervisors" Plaintiffs must allege sufficient facts showing that each defendant, individually, 1) had a legal duty to use care, 2) that the individual defendant breached

that duty by acting unreasonably, and 3) that the breach was the proximate or legal cause of the resulting injury. *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (Cal. Ct. 2013); *see also* CACI 440 and 441.

"As a general principle, an individual has no duty to come to the aid of another." *Williamson, 2012 U.S. Dist. LEXIS 54063, 2012 WL 1327860, at *5.* Thus, there is no legal duty to intervene. There also is no statutory right to police services. *See* Cal. Gov. Code §845; *Eastburn v. Regional Fire Protection Auth.*, 31 Cal. 4th 1175, 1183 (Cal.Ct. 2003). There also is no legal duty to request specific police personnel to respond to an incident. A duty to intervene does not arise until a person's constitutional rights are being violated in the officer's presence, coupled with sufficient time and an opportunity to intervene. *Lujano v. County of Santa Barbara*, 190 Cal.App.4th 801, 809 (Cal.Ct.App. 2010). Even under federal law, the officer has to know that a constitutional violation is occurring <u>and</u> have the opportunity to intervene. *See Cunningham v. Gates,* 229 F.3d 1271, 1289 (9th Cir. 2000); *Ting v. U.S.*, 927 F.2d 1504, 1511 (9th Cir. 1991). In the context of a shooting which happens in split seconds, as here, there is no opportunity to intervene.

The Complaint fails to set forth any legal basis on which the "Doe Supervisors" allegedly failed to intervene or negligently participated. There also is no causal link, and none can be asserted, between the "Doe Supervisors" alleged negligent conduct and the alleged resulting harm to Mr. Michaelidis.

Further, Plaintiffs cannot state a claim against "Doe Supervisors" for negligent training/supervision/hiring. "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." *Delfino v. Agilent Technologies, Inc.*, 145 Cal.App.4th 790, 815 (Cal.Ct.App. 2006) (citations omitted). In a negligent hiring/retention cause of action, the neglect alleged is not that of the employee. The neglect pled is that of the employer itself. *Fernelius v. Pierce*, 22 Cal.2d 226, 233 (Cal.Ct. 1943). Public entities must always act through individuals, and the decision by an individual on behalf of the entity is still properly

considered a decision by the entity, not the individual.  *See, e.g., Munoz*, *supra,* 120 Cal.App.4th at 1113 [because "public entities always act through individuals" alleging individual liability for an agency's decision "would render the distinction between direct and vicarious liability completely illusory in all cases except where the employer is an individual"]; *accord Hibbs v. Los Angeles County Flood Control Dist.*, 252 Cal.App.2d 166, 173 (Cal.Ct.App. 1967) [even if a public entity's chief executive could order protective measures, liability for agency-level decisions should attach to the public entity, not the individual, who would in any event be immune for his or her discretionary decisions].)

The Complaint also does not plead sufficient facts to support a claim for failure to train.  Even if it did, Cal. Gov. Code §820.2 also provides immunity to public entities and public employees for training related decisions.  *Nunn v. State of California* 35 Cal.3d 616, 622 (Cal.Ct. 1984) [state was required to implement a firearm training course but the choice of what training to provide was immunized]; *accord Caldwell v. Montoya*, 10 Cal.4th 972, 988 (Cal.Ct. 1995) [discretionary immunity applied "liberally to protect the officials of public agencies, such as school districts" to leave "public officials free of unseemly judicial interference against them personally when they debate and render those basic policy *and personnel decisions* entrusted to their independent judgment."]; *Vickers v. U.S.*, 228 F.3d 944, 950 (9th Cir. 2000) [discretionary acts include "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments"].)

Even under a theory of direct liability, a cause of action for negligent hiring, supervision or retention against a public entity does not exist under California law.  *de Villers v. County of San Diego*, 156 Cal.App.4th 238, 252-56 (Cal.Ct.App. 2007); *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1110-1113 (Cal.Ct.App. 2004).  There is no statute authorizing such a claim against a public entity.  Consequently, a public entity cannot be liable for not having done more to prevent an incident "either through the promulgation of clearer … procedures, or by better … training and

supervision." *Munoz, supra,* 120 Cal.App.4th at 1112, disapproved on other grounds *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639; *Koussaya v. City of Stockton*, 54 Cal.App.5th 909, 943 (Cal.Ct.App. 2020) [no liability for failing "to properly and adequately hire, train, retrain, supervise, and discipline"].  Such a claim may not be asserted against a public entity unless "grounded in the breach of a statutorily imposed duty owed by the entity to the injured party" that mandates the particular training.  *de Villers, supra,* 156 Cal.App.4th at 255–256; *see also Berman v. Sink*, 2013 U.S. Dist. LEXIS 75443, at *43 (E.D. Cal. 2013)["There is no dispute that the County is not subject to a direct claim for negligent hiring, retention, supervision, training and staffing"]; *Skeels v. Pilegaard*, 2013 U.S. Dist. LEXIS 34302, at *26 (N.D. Cal. 2013) ["California courts of appeal have held that no statutory basis exists for a claim of direct liability based on a public entity's negligent hiring, policymaking, and supervision"].

Accordingly, the negligence claims against the "Doe Supervisors" fail as a matter of law.

## VI.   CONCLUSION.

Based on the foregoing, Defendant City's motion for summary judgment should be granted in its entirety.


Dated:  June 16, 2023       Respectfully submitted,

**HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**SCOTT MARCUS**, Chief Asst. City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney


By: *Colleen R. Smith for*
　　　　TY A. FORD, Deputy City Attorney
*Attorneys for Defendant,* **CITY OF LOS ANGELES**