1 | **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
2 | *dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq. (SBN 319508)
3 | *msincich@galipolaw.com*
Cooper Alison-Mayne (SBN 343169)
4 | *cmayne@galipolaw.com*
21800 Burbank Blvd., Suite 310
5 | Woodland Hills, CA 91367
Tel: (818) 347-3333 | Fax: (818) 347-4118
6 | **MARDIROSIAN & MARDIROSIAN, PLC**
Margarit K. Mardirosian, Esq. (SBN 201885)
7 | mkm@mardirosianlaw.com
1155 North Central Avenue, Suite 201
8 | Glendale, CA 92102
Tel. (818) 244-8166 | Fax (818) 244-0796
9 |
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELINA ATABEKOVA-MICHAELIDIS, and VARDOUI MICHAELIDOU; both individually and as successors in interest to Decedent MELKON MICHAELIDIS, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES; and BRYAN MORALES, <br><br> Defendants. | Case No. 2:22−cv−05620−MCS−MAA <br><br> [*Honorable Mark C. Scarsi*] <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EXPERT OPINION TESTIMONY WHICH IS WITHOUT FOUNDATION OR EVIDENTIARY SUPPORT BY PLAINTIFFS' EXPERT ROGER CLARK** <br><br> <u>PTC & Hearing on Motions *in Limine*</u>: <br> Date:   October 16, 2023 <br> Time:   2:00 p.m. <br><br> <u>Jury Trial</u> <br> Date:   October 31, 2023 <br> Time:   08:30 a.m. <br><br> Ctrm: 7C <br> 350 West 1st Street, 7th Floor <br> Los Angeles, California 90012 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises from the unreasonable use of deadly force against decedent Melkon Michaelidis by Defendant Bryan Morales. Eight officers created a firing line, standing behind cover, and pointing various weapons at decedent, who was suffering from a mental health crisis. As the decedent slowly walked from over 22 feet away, he was shot by a 40mm projectile followed by a beanbag shotgun round. Both less-lethal rounds were effective. As the decedent was falling to the ground, without warning, Morales fired two lethal rounds, killing decedent.

Plaintiffs' police practices expert, Roger Clark, concluded that Morales' use of force was inappropriate and unnecessary under the circumstances, and violated basic Peace Officer Standards and Training (POST) standards. These conclusions are well within Mr. Clark's area of expertise. Defendant now moves to limit Mr. Clark's testimony; specifically, Defendant moves to exclude opinions that they argue: (1) are not supported by Mr. Clark's expertise, (2) opine on the ultimate issue, or (3) lack evidentiary support. Plaintiffs respond to each argument below.

## II. LEGAL STANDARD

The gatekeeping requirement of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is to ensure the reliability and relevancy of expert testimony; "employ[ing] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court must assess (1) the expert's qualification to present the opinions offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In analyzing whether an expert's testimony is admissible, courts consider whether the expert's testimony is relevant (helpful to the jury) and reliable. *Id.* at 589, 591-92. When assessing an expert's qualification to present the opinions

-2-      Case No. 2:22-cv-05620-MCS-MAA
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EXPERT OPINION TESTIMONY OF ROGER CLARK

offered, courts look to the Federal Rules of Civil Procedure, Rule 702 and Federal Rules of Evidence, Rule 703. *Id.* at 592.

Rule 702 provides, in relevant part, that an expert qualified by knowledge, training or experience may testify as to opinions if (a) within the experts specialized knowledge and helpful to the jury, (b) based on sufficient facts, (c) the product o reliable principles and methods, and (d) reliability applies those principles and methods to this matter. Pursuant to Rule 703, an expert may base an opinion on facts in the case that the expert has been made aware of.

Although expert opinions must be reliable, a trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co., Ltd.*, 526 U.S. at 152. Defendant cannot use this standard to exclude an expert's opinions just because they disagree with the expert or the opinions are unfavorable to his position; instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. Defendant's "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [their] own expert witnesses." *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001). Indeed, Defendant has retained his own police practices expert and intends to proffer expert testimony that "Officer Morales's use of lethal force was objectively reasonable…." (Exh. A, Sanchez Report at 19.)

### III.    ARGUMENT

As an initial matter, Mr. Clark's qualification as an expert is based on more than sufficient knowledge, skill, experience, training, and education in the field of police practices. Mr. Clark has over 50 years of experience, including 27 years in the Los Angeles County Sheriff's Department where he underwent a plethora of pertinent training courses and 23 years as a Police Procedures Consultant where he

continued his education and training. Mr. Clark is a POST Command College graduate, has a POST Management Certificate, and Advanced POST Certification. Mr. Clark was a field training officer while assigned as a patrol deputy and trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures. As a Sergeant and as a Lieutenant, Mr. Clark served on the training staff of the LASD's Patrol School which taught the POST accepted patrol tactics, investigation, and apprehension methods.

Furthermore, Mr. Clark has consulted on over a thousand cases regarding use of force and police practices. Mr. Clark has been recognized as an expert in police practices and cited approvingly in judicial decisions on numerous occasions, including by the Ninth Circuit. *See*, *e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (Mr. Clark's expert report was quoted approvingly by the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration, Discipline and Use of Force, wherein the court noted that Mr. Clark is a former sergeant and lieutenant with twenty-seven years of experience in the Los Angeles County Sheriff's Department); *Torres, v. City of Los Angeles*, 540 F.3d 1031, 1042-43 (9th Cir. 2008); *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012); *A. K. H by and through Landeros v. City of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016); *see also Lopez v. Chula Vista Police Dept.*, 2010 WL 685014, at *5 (S.D. Cal. Feb. 28, 2010) ("Based upon Clark's report and the submissions of the parties, the Court concludes that Clark's opinions are sufficiently relevant and reliable to meet the standard of Rule 702."). Defendant, unable to assail Mr. Clark's credentials as a police practices expert, attempt to challenge his individual opinions on various grounds. None of his arguments have merit.

### A. Roger Clark's Expertise Supports His Opinions

Defendant takes issue with several opinions—or categories of opinions—that he claims fall outside of Mr. Clark's expertise. Defendant challenges Mr. Clarks

opinions on the physical effects of the less lethal munitions that struck Michaelidis. Defendant argues that this falls outside the scope of Mr. Clark's expertise and that there is "no physical evidence in the record that the less lethal munitions had any effect on Michaelidis." (Doc. 77 at 7-8.) Defendant also challenges Mr. Clark's opinions regarding the bullet trajectories and how Michaelidis body was position at each shot, arguing that these opinions require a ballistics expert, not a police practices expert. (Doc. 77 at 8-9.)

Neither of these arguments have merit. Mr. Clark is not performing a complex analysis of Michaelidis's body position or a reconstruction of bullet trajectories. He is merely describing what he sees in the video of the incident so that he can opine as to what a reasonable officer would do under the circumstances. Mr. Clark's review of the evidence in this case is consistent with his years of training as a police officer, as a detective, and as a lieutenant, and general police practices, which include evidence construction and crime scene analysis. Mr. Clarks opinion is informed by the critical facts as shown in the video footage of the incident, including the decedent's body position at the time each of the shots were fired and whether he was falling to the ground or turning his back to Defendant. If Mr. Clark is informed of such facts based on the evidence available, he is entitled to opine as to the significance of the body position at the time of the shooting.

Defendant argues that Mr. Clark should not be allowed to testify regarding his opinion that Michaelidis was showing signs of mental illness. (Doc. 77 at 10-11.) Defendant argues that Mr. Clark is offering an expert medical testimony or expert mental health testimony. However, Mr. Clark is merely offering his opinion as to how a reasonable would have responded to Michaelidis, given his behavior as observed in the video and known to Morales, such as Michaelidis cutting himself with the blade of a knife the blade. Mr. Clark is well within his bounds as a police practices expert to comment on how, based on his experience as a twenty-seven-year veteran of the LASD, and POST 37 training specifically dedicated to officers

identifying persons with potential disabilities, with the intent that a reasonable officer would respond to a person showing such obvious signs of a metal health crisis with particular de-escalation tactics. Mr. Clark is permitted to testify regarding the training, standards, and policies which officers are expected to follow and factors they should take into consideration when confronted with the circumstances that were before them. If, based on his experience and training, Mr. Clark believes that a reasonably trained officer would consider that a suspect who is cutting himself and holding a knife by the blade as he sways side to side for several minutes might be suffering from a mental health crisis, and treat the suspect accordingly, then Mr. Clark should permitted to so testify. Further, an element of consideration as to whether an officer should have used deadly force is "whether it should have been apparent to the officer that the person he used force against was emotionally disturbed." Ninth Circuit Model Jury Instructions, No. 9.25. Mr. Clark should be permitted not only to explain his opinions as to whether a reasonable officer would have considered Michaelidis to be emotionally disturbed, but also what that means to an officer based on basic police training and standards. None of Mr. Clark's opinions require formal medical training—yet all are helpful to the jury. He is merely applying his professional opinion to the facts of this case. The impression of mental illness that Michaelidis would convey to a reasonable officer at the scene is essential to a use of force reasonable analysis and should not be excised from Mr. Clarks analysis.

      Defendant cites *Menjivar v. City of Los Angeles*, 2007 WL 4662062, at *6 n.54 (C.D. Cal. July 24, 2007), but that case favors the Plaintiffs rather than Defendant. First, the *Menjivar* court only held that Mr. Clark's "opinion regarding the location of the *bullet casings* found at the scene" (emphasis added) did not meet the *Daubert* standard, but bullet casings are not at issue here. *Id.* Second, Defendant fails to mention that **the court went on to allow Clark's "opinion that [the victim] was shot while turned away and running from [the shooter]."** *Id*. The court noted that Mr. Clarks opinion was adequately supported by his "review of the shooting scene,

the bullet trajectories reflected in the autopsy report, and the testimony of [the shooter] and [a witness], which forms the basis for his opinion that Lopez was shot while turned away and running from Hernandez. This opinion, therefore, is properly considered in deciding defendants' motion." *Id.* Here, as in *Menjivar*, Mr. Clark's opinion that Michaelidis was shot in the back is not based on shell casings, ballistics, or forensic biomechanics. He is basing his opinion on a video that shows the events, along with an autopsy, both of which are typical categories of evidence relied upon by experts in his field, which are also relied upon by Defendant's expert Mr. Sanchez. Thus, his opinions should be admitted.

Similarly, in the two other cases cited by Defendant, Mr. Clark did not have the benefit of a video as he does in this case, so he made inferences about body position based on his trajectory analysis. In *Speer v. County of San Bernardino*, 2021 WL 4459680 (C.D. Cal. July 9, 2021), he was attempting to infer the position of shooter and victim based on the entry wound and direction as recorded in the autopsy. *Id.* at at *2; *see also Sanchez v. Jiles*, No. CV1009384MMMOPX, 2012 WL 13005996, at *8 (C.D. Cal. June 14, 2012) (Mr. Clark inferring body position based solely on autopsy report). But unlike these cases, here, *there is a video*. Mr. Clark need not rely on any expertise in trajectory analysis to form his opinions, he merely analyzed the video of the event and based his opinion on what he sees, along with the results of the autopsy report. As noted in *Sanchez* and *Menjivar*, courts have "previously observed that Clark is qualified to testify as an expert on shooting scene reconstruction and investigative procedures." *Sanchez*, 2012 WL 13005996, at *9 (citing *Menjivar*, 2007 WL 4662062 at *6 n. 54).

For these reasons, Mr. Clarks opinions should not be excluded because they fall well within his expertise.

### B.     Ultimate Issue Opinions Should Be Applied Equally To Both Parties

The Court should reject Defendant's attempt to label Mr. Clark's opinions as legal conclusions. (Doc. 77 at 11-13.) Mr. Clark is not making a legal conclusion, he

uses terms that may overlap with legal terms, such as "inappropriate," "unnecessary," and "excessive and unreasonable", but he uses these terms "as defined by POST and officer training." (Doc. 77 at 40 (excerpt from Mr. Clark's expert report))

"Expert testimony on police practices and the use of force has generally been found to be admissible in cases involving allegations of police misconduct." *Lopez*, 2010 WL 685014, at *1; *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) ("Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training…. A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable."); *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received).

Courts have routinely held that police experts, specifically Mr. Clark, "can permissibly testify about whether [an officer's] conduct comported with applicable procedures and policies on the day of the incident, which does not constitute a legal opinion or conclusion." *Godinez*, 2018 WL 2018048, at *6; see also *Smith*, 394 F.3d at 703 (9th Cir. 2005).

Thus, this portion of Defendant's motion should be denied. However, should the court find that certain opinions do stray into the territory of legal conclusions, Plaintiffs have no objection to both police practices experts refraining from giving ultimate issue or legal opinions. (See generally, Exh. A, Sanchez Report, regarding legal conclusions and ultimate issues opinions at 16-26.) However, Mr. Clark should be allowed to testify as to the training and POST standards regarding the use of force and tactics, as trained to law enforcement officers, and whether any of these uses of force were appropriate based on the POST standards.

### C. Roger Clarks Opinions Are Supported By The Evidence

Finally, Defendant challenges several of Mr. Clark's opinions that he claims are based on "pure speculation." (Doc. 77 at 13.) Defendant takes issue with Mr. Clarks discussion of the following issues: (1) whether Michaelidis was attempting to flee; (2) Michaelidis's intentions during the incident; (3) the effects of less lethal munitions on Michaelidis; and (4) what Morales knew regarding the other officer's use of force prior to shooting. (*Id.*) Defendant argues that Mr. Clark should not be allowed to testify in a way that "attempts to establish disputed facts" or opines on the subjective intentions of others. (*Id.*) Unfortunately, Defendant does not make any arguments to support the above propositions. Plaintiffs (and the Court) are left to construct an argument for Defendant based on Defendant's string citation to seven (7) pages of Mr. Clarks report and eight (8) pages of his deposition.

First, it is not speculation when Mr. Clark opines that Michaelidis is not attempting to flee. Based on his experience as a twenty-seven-year veteran of the LASD, Mr. Clark gives the unremarkable opinion that Michaelidis is not attempting to flee because the video shows that he does not flee. Similarly, Mr. Clark's opinion that the less lethal munitions appeared to be effective is not speculation. Rather, it is the judgement of Mr. Clark, based on his experience, that when an individual is hit with some force followed by their arms and legs collapsing into their body where the impact occurred, and an individual stops advancing and begins falling to the ground after being hit by non-lethal munitions, a reasonable officer would believe that the non-lethal munitions were likely effective.

Defendant's second and fourth propositions are best addressed together. Mr. Clark does not opine as to Michaelidis's intentions or speculate regarding Defendant Morales's subjective knowledge. None of the pages cited by Defendant support that proposition. Mr. Clark does not intend to offer any opinions as to the subjective intentions of Morales or Michaelidis. Mr. Clark's opinions are based solely on the

available evidence, the statements of the officers, and Michaelidis's objective and visible behavior as seen in the video.

Based on his arguments discussed above, Defendant goes so far as to argue that Mr. Clark's opinion that Michaelidis was not an imminent threat should be excluded entirely because it is based on speculation. (*Id.* at 14.) Even in the case that portions of an expert's opinion are based on a piece of unreliable information or a bad inference, that does not justify excluding their testimony. That is precisely what cross examination is for. The Defendant will have an opportunity to fully develop the arguments it hinted at in this brief during cross examination.

Lastly, Plaintiffs lists five excerpts from Mr. Clarks report and claims, *without any argument*, that these statements are "misstatements of and his own interpretations of the applicable federal and state law to support his opinion." (*Id.* at 14.) Plaintiffs are at a loss, as the statements are non-controversial statements about POST standards and training and do not purport to represent legal standards.

Thus, this portion of the Defendant's motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion *in Limine* No. 4 (Doc. No. 77) in its entirety. For each of the reasons set forth above, this Court should find Mr. Clark's testimony on proper police procedures and policies is appropriate in this case. Defendant has not established a sufficient basis for excluding any of Mr. Clark's opinions.

Respectfully submitted,

DATED:  October 2. 2023          LAW OFFICES OF DALE K. GALIPO

                                 By    */s/ Cooper Alison-Mayne*
                                    Dale K. Galipo
                                    Marcel F. Sincich
                                    Cooper Alison-Mayne
                                    *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs ANGELINA ATABEKOVA-MICHAELIDIS and VARDOUI MICHAELIDOU certifies that this brief contains 3,016 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 2, 2023

**LAW OFFICES OF DALE K. GALIPO**
**MARDIROSIAN & MARDIROSIAN, PLC**

By: ___/s/     Cooper Alison-Mayne___
Dale K. Galipo
Marcel F. Sincich
Cooper Alison-Mayne
Margarit K. Mardirosian
*Attorneys for Plaintiffs*